

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| WILDCAT LICENSING LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. 6:23-cv-00449 |
| v. | § | |
| | § | |
| PARROT DRONES SAS and PARROT S.A., | § | **JURY TRIAL DEMANDED** |
| | § | |
| *Defendants.* | § | |

## ORIGINAL COMPLAINT

Plaintiff Wildcat Licensing LLC ("Plaintiff" or "Wildcat Licensing"), by and through its attorneys, files its Original Complaint against Parrot Drones SAS and Parrot S.A. (collectively, "Parrot" or "Defendants"), and demanding trial by jury, hereby alleges as follows:

### I.  NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, to enjoin and obtain damages resulting from Defendants' unauthorized use, sale, and offer to sell in the United States of products, methods, processes, services and/or systems that infringe Wildcat Licensing's United States patents, as described herein.

2.      Defendants manufacture, provide, use, sell, offer for sale, import, and/or distribute infringing products and services, and encourage others to use its products and services in an infringing manner, including their customers, as set forth herein.

3.      Wildcat Licensing seeks past damages and prejudgment and post-judgment interest for Defendants' past infringement of the Wildcat Licensing Patents, as defined below.

## II.  PARTIES

4.      Plaintiff Wildcat Licensing LLC is a limited liability company organized and existing under the laws of the State of Illinois.

5.      On information and belief, Defendant Parrot Drones SAS is a simplified joint stock company organized under the laws of France, with a place of business located at 174 Quai de Jemmapes, 75010 Paris, France.  On information and belief, Parrot Drones SAS is responsible for the development of Parrot branded products sold in the United States.  Although Parrot Drones SAS is engaged in business in the State of Texas, it has not designated an agent for service of process in the state.  The Texas Secretary of State, therefore, is an agent for service of process for Parrot Drones SAS pursuant to TEX. CIV. PRAC. & REM. CODE § 17.044(b).  Defendant Parrot Drones SAS may be served with process by serving the Texas Secretary of State, James E. Rudder Building, 1019 Brazos Street, Austin, Texas 78701.

6.      On information and belief, Defendant Parrot S.A. is a public limited company organized under the laws of France, with a place of business located at 174 Quai de Jemmapes, 75010 Paris, France. On information and belief, Parrot S.A. is responsible for the development of Parrot branded products sold in the United States.  Although Parrot S.A. is engaged in business in the State of Texas, it has not designated an agent for service of process in the state.  The Texas Secretary of State, therefore, is an agent for service of process for Parrot S.A. pursuant to TEX. CIV. PRAC. & REM. CODE § 17.044(b).  Defendant Parrot S.A. may be served with process by serving the Texas Secretary of State, James E. Rudder Building, 1019 Brazos Street, Austin, Texas 78701.

7.      On information and belief, Defendants Parrot Drones SAS and Parrot S.A. operate as a single entity under the name "Parrot."

### III. JURISDICTION AND VENUE

8.      This is an action for patent infringement arising under the Patent Laws of the United States, in particular 35 U.S.C. §271, 281, 283, 284, and 285. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and 1338(a).

9.      Upon information and belief, Defendants transact substantial business in the State of Texas and in this District. Defendants, directly and through subsidiaries or intermediaries (including distributors, retailers, resellers and others), have purposefully and voluntarily placed one or more of their infringing products, as described below, into the stream of commerce with the expectation that these infringing products will be purchased and used by customers in the District. Defendants have committed acts of patent infringement within the District.

10.      This Court has personal jurisdiction over Defendants because they have committed acts giving rise to this action within the State of Texas and within this District. The Court's exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice because Defendants have established minimum contacts with the forum with respect to both general and specific jurisdiction.

11.      This Court has personal jurisdiction over Defendants pursuant to TEX. CIV. PRAC. & REM. CODE § 17.041 et seq. General personal jurisdiction exists over Defendants because Defendants have minimum contacts with this forum as a result of business regularly conducted within the State of Texas and within this district, and, on information and belief, specific personal jurisdiction exists because Defendants have, at least, committed the tort of patent infringement within Texas and this district. Personal jurisdiction also exists because, on information and belief, Defendants have: (1) operated the Internet website, https://www.parrot.com/, which is available to and accessed by users, customers, and potential customers of the Defendants within this judicial

district; (2) sold Defendants' drone and drone-related products within this judicial district; (3) transacted business within the State of Texas; (4) actively infringed and/or induced infringement in Texas; (5) established regular and systematic business contacts within the State of Texas; and (6) continue to conduct such business in Texas through the sale of Defendants' drone and drone-related products. Accordingly, this Court's jurisdiction over the Defendants comports with the constitutional standards of fair play and substantial justice and arises directly from the Defendants' purposeful minimum contacts with the State of Texas.

12.     This Court also has personal jurisdiction over Defendants because, on information and belief, Parrot and its authorized resellers (or those acting on their behalf) and Parrot's customers committed and continue to commit acts of patent infringement in this judicial district. Defendants transact business within the State of Texas and in this judicial district and have committed acts of patent infringement within the State of Texas and this judicial district as set forth hereinafter. Such business includes, without limitation, Defendants' operation of the Internet website, https://www.parrot.com/, which is available to and accessed by users, customers, and potential customers of the Defendants within this judicial district, and the sale of Defendants' drone and drone-related products within this judicial district, both online at https://www.parrot.com/ and through other official online stores, resellers/retail stores, and varied dealers within this jurisdiction.

13.     In addition to Defendants' online store at https://www.parrot.com/us/drones, Defendants have also targeted this District, including with the Austin Fire Department and other strategic partners such as DroneSense.

# Parrot, DroneSense partner to better equip public safety UAS programs

Published May 13, 2020   &lt; Share

*DroneSense software platform adds support for ANAFI drones to deliver the capabilities first responders need*

**Paris and Austin, Texas – May 13, 2020:** Parrot, the leading European drone group, announced today it is partnering with DroneSense— a software company whose comprehensive drone management platform enables public safety organizations to build, manage, and scale their unmanned aircraft programs. Through this partnership, public safety UAS teams are able to use the full suite of DroneSense capabilities tailor-made for the needs of first responders with their ANAFI aircraft.



https://www.directionsmag.com/pressrelease/9795

14.     Parrot targets the State of Texas with advertising campaigns to avail itself of this State and forum.



https://twitter.com/Parrot/status/1394283982200659968

15.     Defendants have also authorized online retailers, as listed at https://www.parrot.com/us/reseller, and have extended warranties to products purchased from the authorized Parrot Dealers. Such authorized dealers include those companies listed by Parrot and others (e.g., Frontier Precision and RMUS). Most, if not all, of these online retailers are available to and accessed by users, customers, and potential customers of the Defendants within this judicial district (e.g., https://www.bhphotovideo.com and https://www.walmart.com/browse/electronics/parrot-drones/3944_5525941_5960206_9915830).



16.     Defendants also have designated professional dealers operating in the United States, all of which have online stores through which to sell Defendants' drones and drone-related products, which are available to and accessed by users, customers, and potential customers of the Defendants within this judicial district.

17.     On information and belief, Parrot maintains a substantial amount of authorized resellers located within the district. This information presented is not wholly representative of all authorized resellers located within the Western District of Texas, but merely demonstrative.

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) and 28 U.S.C. § 1391(b), (c) because Defendants reside here, because the Defendants collectively operate as a single entity, because Defendants are foreign entities not incorporated in the United States, and because Defendants have committed acts of infringement in this judicial district.

## IV.  FACTUAL ALLEGATIONS

### WILDCAT LICENSING PATENTS

19.     On June 5, 2007, United States Patent No. 7,228,232 ("the '232 patent"), entitled "Navigating a UAV with Obstacle Avoidance Algorithms," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") to William Kress Bodin, Jesse Redman, and Derral Charles Thorson, with the International Business Machines Corporation ("IBM") as assignee.

20.     On June 12, 2007, United States Patent No. 7,231,294 ("the '294 patent"), entitled "Navigating a UAV," was duly and legally issued by the USPTO to William Kress Bodin, Jesse J. W. Redman, and Derral C. Thorson, with IBM as assignee.

21.     On October 23, 2007, United States Patent No. 7,286,913 ("the '913 patent"), entitled "Navigating a UAV with Telemetry Through a Socket," was duly and legally issued by the USPTO to William Kress Bodin, Jesse J. W. Redman, and Derral C. Thorson, with IBM as assignee.

22.     The '232, '294, and '913 patents are referred to hereinafter as "the Wildcat Licensing Patents."

23.     Plaintiff Wildcat Licensing LLC is the owner of the entire right, title, and interest in and to the Wildcat Licensing Patents, with the right to sue in its own name. The Wildcat Licensing Patents were initially assigned by IBM to Daedalus Group LLC on or about September

30, 2019. The respective assignments were recorded on November 14, 2019, at the U.S. Patent and Trademark Office. Daedalus Group LLC then assigned the patents to Wildcat Licensing LLC, on or about January 24, 2020. The respective assignments were recorded on or about January 29, 2020, at the U.S. Patent and Trademark Office.

24.     Each of the Wildcat Licensing Patents are presumed valid under 35 U.S.C. § 282.

25.     Each of the Wildcat Licensing Patents relate to innovative technology for piloting, controlling, navigating, and optimizing flight missions for unmanned aerial vehicles ("UAV" or "drone").

**United States Patent No. 7,228,232**

26.     The '232 patent claims UAV obstacle avoidance technologies that anticipated the future position of the UAV through GPS sequencing and avoid obstacles in dependence of that anticipated future position. Such obstacles may be physical three-dimensional objects such as buildings, mountains, and others that will occur to those of skill in the art; or two and three - dimensional geographic areas such as a no-fly zone. In the present complaint, Defendants' suite of drones and drone-related products infringe on this inventive aspect of the '232 patent. Representative of this infringement is Defendants' Parrot ANAFI Ai drones. These drones house a GPS module on-board, which transmits UAV location and flight control instructions back and forth from the UAV user's remote-control device, and vice versa. In so doing, the GPS module tracks the UAV location and ensures the UAV is not entering a restricted zone and/or no fly zones. Such interference includes, but is not limited to, decreased speed, takeoff failure, and flight termination.

27.     The '232 patent overcomes shortcomings in the prior art, which required conventional UAV operators to manually control the flight using the camera images from the UAV

that were provided to the operator through downlink telemetry (col. 1, lines 18-23). Certain of the inventive aspects of the '232 patent addressed the need for improvements in the area of UAV navigation, by automating certain aspects of the UAV mission (col. 1, lines 26- 30). More specifically, the inventive aspects of automatically identifying and avoiding obstacles that would otherwise disrupt the flight of the UAV (col. 17, lines 66-67), were not well-understood, routine, or conventional at the time of the invention.  Indeed, during prosecution of the '232 patent, the PTO recognized in an Office Action dated August 25, 2006 that the prior art "does not show or reasonably suggest, in combination with the other claimed subject matter, anticipating the future position of the UAV, identifying an obstacle in dependence upon the future position, selecting an obstacle avoidance algorithm and piloting the UAV using the [selected] obstacle avoidance algorithm." These steps, captured in claim 1 of the '232 patent, were among the inventive concepts of the '232 patent.

### United States Patent No. 7,231,294

28.    The '294 patent claims UAV navigation technologies that maps a UAV's position, from starting position and through waypoints, for a UAV user on a GUI map on a remote-control device. In the present complaint, Defendants' suite of drones and drone-related products infringe on this inventive aspect of the '294 patent. Representative of this infringement is Defendants' Parrot ANAFI Ai drones, which map the UAVs' position from the start of a mission, through mission waypoints, and to the end of a mission.

29.    The '294 patent overcomes shortcomings in the prior art, which required conventional UAV operators to manually control the flight using the camera images from the UAV that were provided to the operator through downlink telemetry (col. 1, lines 17-20). Certain of the inventive aspects of the '294 patent addressed the need for improvements in the area of UAV

navigation, by automating certain aspects of the UAV mission (col. 1, lines 24- 28). More specifically, the inventive aspects of automatically selecting waypoints using a mouseclick or joystick button click, to control the flight path of the UAV (col. 1, lines 33- 36), were not well-understood, routine, or conventional at the time of the invention. Moreover, the ability to upload multiple waypoints enabled more complex missions to be performed with just a few keystrokes or mouseclicks on the remote control device (col. 1, lines 57-59 and col. 2, lines 2-4), which was also not well-understood, routine, or conventional at the time of the invention.   Indeed, during prosecution of the '294 patent, the PTO recognized in a Notice of Allowance dated February 7, 2007, that the '294 patent made "a significant improvement in [the] UAV field." The PTO also recognized that "receiving in a remote control device a user's selection of a GUI map pixel that represents a waypoint for UAV navigation, the pixel having a location on the GUI" and "mapping the pixel's location on the GUI to Earth coordinates of the waypoint" were not performed in the conventional systems of the prior art. These are among the inventive concepts of the '294 patent, and are captured in the steps of claim 1.

**United States Patent No. 7,286,913**

30.     The '913 patent claims UAV navigation technologies for downlink telemetry of the UAV to the user's remote-control device, which then uplinks telemetry and flight control instructions to the UAV through a socket. Here, a socket is an end-point of a two-way communication link between two application programs running on a network. This communication link pairs the user's remote-control device, or controller, with the drone or UAV to enable the user to operate the UAV.  In some instances, a socket on a UAV would be considered a server-side socket, and a socket on a remote-control device may be considered a client socket. In the present complaint, Defendants' suite of drones and drone-related products infringe on this inventive aspect

of the '913 patent. Representative of this infringement is Defendants' Parrot ANAFI Ai drones, which house a receiver/transmitter on-board, which serves as the server-side socket transmitting downlink telemetry to the UAV user's remote-control device through one or more application programs. Then using the selected remote-control device application, which may serve as the client socket, uplink telemetry and flight control instructions are transmitted back to the UAV.

31.    The '913 patent overcomes shortcomings in the prior art, which required conventional UAV operators to manually control the flight using the camera images from the UAV that were provided to the operator through downlink telemetry (col. 1, lines 18-21). Certain of the inventive aspects of the '913 patent addressed the need for improvements in the area of UAV navigation, by automating certain aspects of the UAV mission (col. 1, lines 25-28). More specifically, the inventive aspects of automatically selecting waypoints using a mouseclick or joystick button click, to control the flight path of the UAV (col. 1, lines 33- 35), were not well-understood, routine, or conventional at the time of the invention.

32.    Moreover, the ability to upload multiple waypoints enabled more complex missions to be performed with just a few keystrokes or mouseclicks on the remote control device (col. 1, lines 64-67 and col. 2, lines 1-2, 10-11), and the use of a socket to facilitate communications between the UAV and the remote control device (col. 2, lines 34-37), were also not well-understood, routine, or conventional at the time of the invention.

<u>DEFENDANTS' ACTS</u>

33.    Defendants collectively operate as a provider of drone products and solutions and provides hardware and software directed to drones to their customers in the United States, including in this District.

34.     On information and belief, Defendants design, develop, support, and coordinate the importation into the United States of the exemplary accused products set forth below.

35.     Defendants' Parrot ANAFI Ai Drones ("UAV") include obstacle avoidance system to avoid obstacles in the drone's way as it navigates.

## 1. Reuse built-in Guidance modes

You can use the following autonomous Guidance modes:

**Move To**: Give the drone a GPS destination coordinates and a target heading orientation.

**Relative Move**: Give the drone a distance to travel from current position and a yaw angle to reach from current yaw attitude.

**FlightPlan**: Give the drone a list of waypoints to reach. The waypoint list can be modified dynamically (How to update a FlightPlan dynamically).

> ✏️ Note
>
> Waypoints can not be updated more than once per second. If a new waypoint update request is received faster than this, it will be delayed.

These three modes can be selected by using the `set_guidance_mode()` command. It includes trajectory correction by using built-in obstacle avoidance algorithms, which can be disabled if needed (using oa_manager).

https://developer.parrot.com/docs/airsdk/general/autonomous_flight.html

36.     The Accused Products use cameras to avoid obstacles.  The camera data is used by the obstacle avoidance (OA) system.

The drone's obstacle avoidance (OA) system relies on stereo cameras, located on each side of the main camera. Make sure the lenses of the stereo cameras are always perfectly clean: you can use a drop of specialized (photo) lens cleaning liquid to ensure the cleanliness of the optics.

The OA system is activated through the Quick Settings and its status is displayed on the HUD, through a shield icon in the top bar:

- grey: OA deactivated
- green: OA activated and operating optimally
- orange: OA activated, degraded operation
- red: OA activated, but inoperative

https://www.parrot.com/en/support/anafi-ai/how-does-anafi-ais-obstacle-avoidance-work

37.     The     Accused     Products     also     include     a     GPS     receiver.        *See*
https://www.parrot.com/assets/s3fs-public/2021-11/white-paper-anafi-ai-v1.6.pdf

38.     Parrot Drones determine the flight Plan ("sequence…data") using the GPS receiver
and identify anticipated obstacles along the determined flight route ("anticipating…UAV", "in
dependence…GPS data").

39.     Parrot Drones include a GPS receiver. In order to navigate ("piloting... UAV")
towards the destination point, Parrot Drones determine the flight Plan ("sequence…data") using
the GPS receiver and identify anticipated obstacles along the determined flight route ("identifying
an obstacle").

Obstacle avoidance

With the knowledge of the 3D environment surrounding the aircraft stored in the occupancy grid, it
is possible to provide obstacle avoidance capabilities to ANAFI Ai. This offers considerable
additional safety to autonomous missions but is also useful for manual flight, especially if the line of
sight between the pilot and the aircraft is degraded.

https://www.parrot.com/assets/s3fs-public/2021-11/white-paper-anafi-ai-v1.6.pdf

40.     The Accused Products correct a trajectory to avoid obstacles.



*Example of corrected trajectory computed by the obstacle avoidance algorithm in response to a reference trajectory hitting a tree*

Every 30 ms, ANAFI Ai predicts what the nominal trajectory to follow will be over a short time horizon in the future. This prediction is deduced from the references sent by the user, whether it be piloting commands from the hand controller, waypoints to join for flight plan or an input trajectory. Then, using a simulated internal drone model, a replanning algorithm computes the smallest possible corrections to this predicted nominal trajectory that make it both collision free and feasible by the drone.

https://www.parrot.com/assets/s3fs-public/2022-01/whitepaperanafiai.pdf

41.     Defendants instruct their customers in how to operate the Accused Products in an infringing manner, including by way of User Guides. *See, e.g.,* https://www.parrot.com/assets/s3fs-public/2021-09/bebop-drone_user-guide_uk_v.3.4.pdf

42.     On information and belief, Defendants incorporate hardware components and computer code to practice the claimed method.  Also on information and belief, Defendants cause to be executed or directs or controls the Accused Products to execute that code and other computerized instructions to initiate, configure and carry out the claimed methods.

43.     But for Defendants including this code and the execution of this code by or at the direction or control of Defendants, no infringement would occur. Defendants thus control the timing and performance of the claimed methods.

44.     On information of belief, Defendants also implement contractual protections in the form of license and use restrictions with its customers to preclude the unauthorized reproduction, distribution, and modification of its software.

45.     Moreover, on information and belief, Defendants implement technical precautions to attempt to thwart customers who would circumvent the intended operation of Defendants' products.

**Notice to Defendants**

46.     Defendants had actual and/or constructive knowledge of the Wildcat Licensing Patents and the infringing conduct at least as early as 2015 through their own prosecution activities,

including citing to the '294 patent in connect with prosecution of FR2957266B1/U.S. Patent No. 8,958,927. In addition, Defendants have been provided with formal legal notice at least as early as the date when Wildcat Licensing effected service of the Original Complaint.

## V.  COUNTS OF PATENT INFRINGEMENT

COUNT ONE
INFRINGEMENT OF U.S. PATENT NO. 7,228,232

47.     Wildcat Licensing incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

48.     Wildcat Licensing is the assignee and owner of all right, title, and interest to the '232 Patent. Wildcat Licensing has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

49.     Exemplary infringing products include Parrot ANAFI Ai drones, all substantially similar products, all associated computer hardware, software and digital content, and all products operating in a substantially similar manner ("'232 Exemplary Infringing Products"). On information and belief, at least since the release of the '232 Exemplary Infringing Products and until the expiration of the '232 Patent, without authorization or license from Wildcat Licensing, Defendants were directly infringing each and every element of at least claim 1 of the '232 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271(a), including through making, using (including for testing purposes), selling, and offering for sale methods and articles infringing one or more claims of the '232 Patent. Defendants are thus liable for direct infringement of the '232 Patent pursuant to 35 U.S.C. § 271(a).

50.     The '232 Exemplary Infringing Products implement the claimed obstacle detection and avoidance, as set forth above and in the excerpts from Defendants' technical manuals.

51.     On information and belief, at least since the release of the '232 Exemplary Infringing Products and until the expiration of the '232 Patent, without authorization or license from Wildcat Licensing, Defendants were indirectly infringing each and every element of at least claim 1 of the '232 Patent, either literally or equivalently, including actively and knowingly inducing infringement of the '232 Patent under 35 U.S.C. § 271(b). Such inducements include without limitation, with specific intent to encourage the infringement, knowingly inducing consumers to use infringing articles and methods that Defendants know or should know infringe one or more claims of the '232 Patent. Defendants instruct and encourage customers to make and use the patented inventions of the '232 Patent by operating Defendants' products in accordance with Defendants' instructions and specifications. Defendants specifically intend its customers to infringe by implementing obstacle avoidance through obstacle identification and piloting of the UAV in accordance with claimed avoidance algorithms.

52.     On information and belief, at least since the release of the '232 Exemplary Infringing Products and until the expiration of the '232 Patent, without authorization or license from Wildcat Licensing, Defendants were indirectly infringing each and every element of at least claim 1 of the '232 Patent, including contributory infringement of the '232 Patent under 35 U.S.C. § 271(c) and/or § 271(f), either literally and/or under the doctrine of equivalents. Defendants' contributory infringement includes without limitation, Defendants' offer to sell, a component of a product or apparatus for use in a process, that (i) is material to practicing the invention claimed by claim 1 of the '232 Patent, (ii) is not a staple article or commodity of commerce suitable for substantial non-infringing use, and (iii) Defendants are aware or know to be especially made or especially adapted for use in infringement of the '232 Patent. Defendants specifically intend its customers to infringe by implementing access control lists for filtering and dropping of packets

implemented at the ingress port for egress pass/drop determination, as set forth above and in the excerpts from Defendants' technical manuals.

53.     On information and belief, Defendants' customers deploy the accused products on networks in combination with other products. The specific code portions and modules directed to the infringing functionality will be identified as those systems are made available for inspection and review by Wildcat Licensing.

54.     As a result of Defendants' infringement of the '232 Patent, Wildcat Licensing has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

<div align="center">

COUNT TWO
INFRINGEMENT OF U.S. PATENT NO. 7,231,294

</div>

55.     Wildcat Licensing incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

56.     Wildcat Licensing is the assignee and owner of all right, title, and interest to the '294 Patent. Wildcat Licensing has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

57.     Exemplary infringing products include Parrot ANAFI Ai drones, all substantially similar products, all associated computer hardware, software and digital content, and all products operating in a substantially similar manner ("'294 Exemplary Infringing Products"). On information and belief, at least since the release of the '294 Exemplary Infringing Products and until the expiration of the '294 Patent, without authorization or license from Wildcat Licensing, Defendants were directly infringing each and every element of at least claim 1 of the '294 Patent, either literally or equivalently, as infringement is defined by 35 U.S.C. § 271(a), including through

making, using (including for testing purposes), selling, and offering for sale methods and articles infringing one or more claims of the '294 Patent. Defendants are thus liable for direct infringement of the '294 Patent pursuant to 35 U.S.C. § 271(a).

58.     The '294 Exemplary Infringing Products implement selection and implementation of flight path waypoints in the manner claimed.

59.     On information and belief, at least since the release of the '294 Exemplary Infringing Products and until the expiration of the '294 Patent, without authorization or license from Wildcat Licensing, Defendants were indirectly infringing each and every element of at least claim 1 of the '294 Patent, either literally or equivalently, including actively and knowingly inducing infringement of the '294 Patent under 35 U.S.C. § 271(b). Such inducements include without limitation, with specific intent to encourage the infringement, knowingly inducing consumers to use infringing articles and methods that Defendants know or should know infringe one or more claims of the '294 Patent. Defendants instruct and encourage customers to make and use the patented inventions of the '294 Patent by operating Defendants' products in accordance with Defendants' instructions and specifications. Defendants specifically intend its customers to infringe by implementing selection of waypoints using the GUI, mapping the pixels location to earth coordinates, communicating waypoint coordinates and piloting the UAV in the manner claimed.

60.     On information and belief, at least since the release of the '294 Exemplary Infringing Products and until the expiration of the '294 Patent, without authorization or license from Wildcat Licensing, Defendants were indirectly infringing each and every element of at least claim 1 of the '294 Patent, including contributorily infringing the '294 Patent under 35 U.S.C. § 271(c). Defendants' contributory infringement includes without limitation, Defendants' offer to

sell, a component of a product or apparatus for use in a process, that (i) is material to practicing the invention claimed by claim 1 of the '294 Patent, (ii) is not a staple article or commodity of commerce suitable for substantial non-infringing use, and (iii) Defendants are aware or knows to be especially made or especially adapted for use in infringement of the '294 Patent.

61.     On information and belief, Defendants' customers deploy the accused products on networks in combination with other products. The specific code portions and modules directed to the infringing functionality will be identified as those systems are made available for inspection and review by Wildcat Licensing.

62.     As a result of Defendants' infringement of the '294 Patent, Wildcat Licensing has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

<div align="center">

COUNT THREE
INFRINGEMENT OF U.S. PATENT NO. 7,286,913

</div>

63.     Wildcat Licensing incorporates by reference its allegations in the preceding paragraphs as if fully restated in this paragraph.

64.     Wildcat Licensing is the assignee and owner of all right, title, and interest to the '913 Patent. Wildcat Licensing has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

65.     Exemplary infringing products include Parrot ANAFI Ai drones, all substantially similar products, all associated computer hardware, software and digital content, and all products operating in a substantially similar manner ("'913 Exemplary Infringing Products"). On information and belief, at least since the release of the '913 Exemplary Infringing Products and until the expiration of the '913 Patent, without authorization or license from Wildcat Licensing,

Defendants were directly infringing each and every element of at least claim 1 of the '913 Patent, as infringement is defined by 35 U.S.C. § 271(a), including through making, using (including for testing purposes), selling and offering for sale methods and articles infringing one or more claims of the '913 Patent. Defendants are thus liable for direct infringement of the '913 Patent pursuant to 35 U.S.C. § 271(a).

66.     The '913 Exemplary Infringing Products implement selection and implementation of flight path waypoints in the manner claimed, as set forth above and in the excerpts from Defendants' technical manuals.

67.     On information and belief, at least since the release of the '913 Exemplary Infringing Products and until the expiration of the '913 Patent, without authorization or license from Wildcat Licensing, Defendants were indirectly infringing each and every element of at least claim 1 of the '913 Patent, including contributorily infringing the '913 Patent under 35 U.S.C. § 271(c). Defendants' contributory infringement includes without limitation, Defendants' offer to sell, a component of a product or apparatus for use in a process, that (i) is material to practicing the invention claimed by claim 1 of the '913 Patent, (ii) is not a staple article or commodity of commerce suitable for substantial non-infringing use, and (iii) Defendants are aware or knows to be especially made or especially adapted for use in infringement of the '913 Patent.

68.     As a result of Defendants' infringement of the '913 Patent, Wildcat Licensing has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

## VI.    JURY DEMAND

69.     Plaintiff Wildcat Licensing demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to FED. R. CIV. P. 38.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Wildcat Licensing prays for judgment and seeks relief against Defendant as follows:

A.    That the Court determine that one or more claims of the Wildcat Licensing Patents is infringed by Defendant, either literally or under the doctrine of equivalents;

B.    That the Court award damages adequate to compensate Wildcat Licensing for the patent infringement that has occurred, together with prejudgment and post-judgment interest and costs, and an ongoing royalty for continued infringement; and

C.    That the Court award such other relief to Wildcat Licensing as the Court deems just and proper.

DATED: June 13, 2023                    Respectfully submitted,

_/s/ Andrew G. DiNovo_
Andrew G. DiNovo
Texas State Bar No. 00790594
adinovo@dinovoprice.com
Christopher V. Goodpastor
Texas State Bar No. 00791991
cgoodpastor@dinovoprice.com
**DINOVO PRICE LLP**
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Facsimile:  (512) 539-2627

_ATTORNEYS FOR PLAINTIFF_